| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------x<br>In re:<br><br>Michael J. Bode,<br><br>                   Debtor.<br>-------------------------------------------------------------x<br>Ling's Properties LLC,<br>                   Plaintiff,<br><br>   -against-<br><br>Michael J. Bode,<br>                   Defendant.<br>-------------------------------------------------------------x | NOT FOR PUBLICATION<br><br>Chapter 7<br><br>Case No. 14-71502-reg<br><br><br><br><br>Adv. Pro. No. 14-8202-reg |

## Memorandum Decision

This matter is before the Court pursuant to an adversary proceeding commenced by Ling's Properties, LLC ("Plaintiff") seeking to except from discharge a judgment debt owed by Michael Bode ("Debtor" or "Defendant") pursuant to Bankruptcy Code sections 523(a)(2)(A), 523(a)(4) and 523(a)(6). Previously Plaintiff filed a motion for summary judgment seeking judgment as a matter of law on all counts of the complaint based on the findings by the state court and application of the doctrine of collateral estoppel. At the hearing on the motion for summary judgment, the Court denied Plaintiff's motion and set the matter down for an evidentiary hearing.

Previously, the State Court found Defendant's company liable for acting as an unlicensed broker under RPL Section 442 in connection with a real estate transaction between Plaintiff and Defendant's company. At the hearing to determine the amount of statutory damages to be awarded, the State Court determined *sua sponte* that Defendant's company was the alter ego of Defendant, and that "equity requires the corporate veil to be pierced and the individual defendant

Bode be held personally liable". As a result, Defendant was deemed liable for his company's violation of a strict liability statute. This Court must give full faith and credit to the judgment awarded in the State Court. However, under *Brown v. Felsen*, 442 U.S. 127 (1979) and its progeny, the Court is not limited to the four corners of the State Court action in determining whether the debt is nondischargeable. While collateral estoppel does apply to certain issues raised in this adversary proceeding, the findings of the State Court do not address the elements of the causes of action in this complaint under Bankruptcy Code sections 523(a)(2), (4) and (6). Therefore, this Court must determine whether Plaintiff has provided sufficient evidence to establish the elements required under each subsection. After conducting the hearing, the Court finds that Plaintiff has failed to show at trial that Defendant had the requisite intent to defraud or harm Plaintiff. Therefore, the Court finds that Plaintiff has failed to meet its burden of proof as to each count. Therefore, judgment shall be entered in favor of Defendant, dismissing the complaint in its entirety.

## FACTS

Linda Su is the president of a company that makes children's furniture. In 2009, Linda Su commenced to find suitable real property to relocate her company. Linda Su was assisted by a broker, Mr. Kelly Koukou, in her search for property for her company. Su decided to relocate to property in Islandia, New York ("Property") and sought to purchase the Property, which was encumbered by a mortgage held by Bank of America. Koukou recommended Defendant to Su because he was more experienced in dealing with the acquisition of distressed properties encumbered by mortgages. Defendant is a licensed attorney and real estate broker. Defendant is the managing member of Gnosis VII LLC ("G7"). G7 is not a licensed real estate broker. Linda Su formed Plaintiff for the purpose of purchasing the mortgage encumbering the Property.

On May 1, 2009, Plaintiff and G7 entered into a contract ("Contract") regarding services to be provided by G7 to Plaintiff. The Contract contained two separate provisions regarding payment for G7's services. The first provision entitled Defendant to payment in the amount of $24,500 upon the closing of the sale of the mortgage from Bank of America to Plaintiff. The provision provided that G7 would use "its best efforts on behalf of the mortgage buyer to procure a satisfactory purchase and sale agreement for the Bank of America Mortgage, which allows for adequate due diligences and a reasonable period of time to complete its purchase. Execution of the purchase and sale agreement, followed by the sale and assignment to [Plaintiff] will be deemed completion of the procurement of this agreement." Plaintiff's Ex. 5.

The second provision entitled the Defendant to payment in the amount of $24,500 upon the conveyance of title of the Property to Plaintiff. The provision provided that Plaintiff "expressly authorizes G7 to use its best efforts on behalf of [Plaintiff] to work with and advise the agents and designees of Plaintiff] of those strategies that intend to cause title to the Desired Property to be acquired by [Plaintiff]. [Plaintiff] agrees to respect these strategies as trade secrets of G7 and make best efforts to keep communications of these strategies as confidential as possible to only those parties who are helping facilitate the Desired Property Acquisition." Id.

Plaintiff purchased the mortgage from Bank of America in the amount of $800,000. Upon the closing of the mortgage, Defendant was entitled to a commission in the amount of $24,500. Defendant received payment in the form of a check dated June 26, 2009 made out to G7. Plaintiff's Ex. 7. Plaintiff acquired title to the Property in 2010 after proceeding in a foreclosure action against the owner of the Property. After Plaintiff obtained title to the Property, Defendant sent a collection letter dated July 23, 2010 addressed to Plaintiff requesting payment in the amount of $24,500 pursuant to the terms of the Contract. In September, 2013, Plaintiff sold the

Property to a third party for $1,535,000. At trial, Su testified that Plaintiff realized a net gain in the amount of $20,000 from the sale of the Property. Additionally, despite the profit realized from the sale, Su alleges that the Debtor's performance was unsatisfactory, in part because the Debtor never informed Su of $144,000 due in back taxes with respect to the Property until after Plaintiff purchased the Bank of America mortgage.

On September 9, 2010, Plaintiff filed an action against Defendant and G7 in the Supreme Court, State of New York, County of Nassau. Plaintiff sought a declaratory judgment against Defendant and G7 that G7 was not entitled to compensation arising from the Contract because G7 was not a licensed broker as required under RPL section 442. Plaintiff also sought an award of damages pursuant to RPL section 442-e in the amount of four times the $24,500 previously paid to G7.  Plaintiff appealed an order of the Supreme Court, Nassau County, which denied its motion for summary judgment. On appeal, the Appellate Division held that G7 was not entitled to compensation pursuant to the Contract because it was not a licensed broker under RPL Section 442-e. The Appellate Division remanded the matter to the Supreme Court of Nassau County for the sole purpose of determining the amount of damages to be awarded to Plaintiff pursuant to RPL section 442-e. *Ling's Properties, LLC v. Bode and Gnosis VI, LLC*, 94 A.D.3d 951, 953 (App. Div. 2012).

In determining the amount of damages to be assessed for violating RPL Section 442, the State Court analyzed the conduct of the Defendant and made several findings.   First, the Court determined that Ms. Su was under the impression that Defendant was acting as her attorney in the transaction, evidenced by writing "legal fee" in the memo line of the check made payable to G7, and Defendant's attendance at the closing.  Plaintiff's Ex. 2, p. 2.  The State Court also concluded that Defendant structured the arrangement in order to secure a greater fee than what

he could have charged as a legal fee, and that Defendant used G7 to avoid the requirement that Defendant act as her attorney. Plaintiff's Ex. 2, p. 3. In addition, the State Court determined that the fee charged by Defendant was "clearly excessive." Plaintiff's Ex. 2. P. 4. The state court went on to determine that G7 was "a mere shell entity created solely for Bode's own purposes" and under the doctrine of alter ego, Defendant and G7 were one and the same. The Court awarded a judgment in favor of Plaintiff in the amount of $24,500 plus a penalty pursuant to RPL Section 442-e(3) in the amount of $24,500 with interest, plus costs and disbursements. Plaintiff's Ex. 2. P. 7. Plaintiff now seeks to have this judgment debt deemed non-dischargeable under sections 523(a)(2)(A), (a)(4) and (a)(6). After denying Plaintiff's motion for summary judgment, the Court held an evidentiary hearing on all counts. The following constitutes the Court's findings based on the record created at trial, and applicable law as to each count.

## DISCUSSION

### Res Judicata and Collateral Estoppel

While the Plaintiffs presented evidence in the form of witness testimony and documents to support their case, this Court notes that the State Court made certain findings which may bear on the § 523 claims. This Court must determine the applicability of res judicata and collateral estoppel in this adversary proceeding.

The concept of res judicata "prevents litigation of all grounds for, or defenses to, recovery that were previously available to parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown v. Felson*, 442 U.S. 127, 131 (1979). In *Brown v. Felsen*, the Supreme Court concluded that res judicata did not prevent the bankruptcy court from looking beyond the record of the state court proceeding to decide whether the debt at issue was

actually a debt for money obtained by fraud. *Id*. At 138-139. As recognized by subsequent courts, "[r]es judicata does not bar the bankruptcy court from deciding the issue of whether a debt is dischargeable, even when similar issues have already been decided by a state court of competent jurisdiction." *Margulies v. Hough* (*In re Margulies*), 517 B.R. 441, 452 (S.D.N.Y. 2014). Thus this Court must make its own inquiry into the applicability of the relevant Bankruptcy Code sections to determine whether the judgment debt is nondischargeable

While res judicata does not bar an inquiry into the nature of the debts, collateral estoppel might preclude certain issues from being litigated. "Under either federal law or New York State law, collateral estoppel, or-issue preclusion, bars the relitigation of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding regardless of whether the two suits are based on the same cause of action." *Postlewaite v. McGraw-Hill,* 333 F.3d 42, 48 (2d Cir. 2003) (citing *Lawlor v. National ScreenService Corp.*, 349 U.S. 322, 326, 75 S. Ct. 865, 99 L.Ed. 1122 (1955); *Capital Telephone Co. v.Pattersonville Telephone Co.,* 56 N.Y.2d 11, 17, 451 N.Y.S.2d 11, 13, 436 N.E.2d 461 (1982)). In this case, to the extent the State Court has made findings which are relevant to any of the causes of action which are the subject of this adversary proceeding, it is appropriate to rely on the findings made by the State Court.

This Court must look to state law to determine whether collateral estoppel should apply in this case. Under New York law, collateral estoppel prevents parties from relitigating an issue when "(1) the identical issue necessarily was decided in the prior action and is decisive of the present action, and (2) the party to be precluded from relitigating the issue had a full and fair opportunity to litigate the issue in the prior action." *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 65 (2d Cir.2007), *cert. denied*, 129 S.Ct. 895 (2009) (citations omitted). Here, the Court is bound by the State Court findings that: 1) there is a judgment debt based on a strict liability

statute in the amount of $24,500 plus a penalty pursuant to RPL Section 442-e(3) in the amount of $24,500 with interest, plus costs and disbursements, and 2) Defendant is the alter ego of G7. The remainder of the findings by the State Court do not satisfy the requirements of collateral estoppel because none of the findings relate to whether the debt was incurred by fraudulent means. The statute is a strict liability statute, and the damages awarded were based on conduct that does not fit within sections 523(a)(2), (4) or (6). In fact the only allegedly fraudulent act by Defendant was his conduct which created the impression that he would act as Ms. Su's lawyer. This does not suffice to establish as a matter of law that Defendant fraudulently induced Plaintiff to enter into the contract with G7.   Because the findings by the State Court cannot be used to establish that any other elements of § 523(a)(2), (4) or (6) of the Bankruptcy Code were "actually litigated,"  this Court is required to make an independent determination that the elements of § 523(a) have been satisfied.

### Section 523(a)(2)(A)

Section 523(a)(2)(A) deems non-dischargeable any debt arising from a debtor's "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). False pretenses, false representations and actual fraud are similar terms but all have somewhat different meanings. *See Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005). One can satisfy the elements of section 523(a)(2)(A) by establishing only one of the three types of fraud. *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 260 (Bankr. S.D.N.Y. 2000). Although these are separate causes of action, each one has a common element, i.e., an implied or express misrepresentation. Critical components in this analysis require findings regarding the Debtor's intent, and the

plaintiff's reliance on the debtor's statements or conduct. The plaintiff has the burden of demonstrating non-dischargeability under this section by a preponderance of the evidence. *Sandak v. Dobrayel (In re Dobrayel)*, 287 B.R. 3, 12 (Bankr.S.D.N.Y. 2002); *Farraj v. Soliz (In re Soliz)*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996).

In Plaintiff's second cause of action, Plaintiff asserts that Defendant falsely represented to Linda Su and Plaintiff that he would act as Plaintiff's attorney in order to convince Linda Su to sign the contract for an exorbitant fee. Additionally, Plaintiff asserts that Defendant falsely represented to Plaintiff that he would use his trade secrets and strategies to help Plaintiff acquire the property. Despite these representations, Plaintiff paid the full amount owed on the mortgage plus an additional $144,000 in back taxes. Moreover, Plaintiff's son, Mr. Su, testified that Defendant misrepresented the speed and efficiency at which the transaction would be completed. As such, Plaintiff seeks to have the Debt excepted from discharge pursuant to Bankruptcy Code § 523(a)(2)(A) of the Bankruptcy Code.

Based on the testimony and documentary evidence, the Court finds that Plaintiff failed to prove by a preponderance of the evidence that Debtor intentionally defrauded Plaintiff, through either false pretenses or actual fraud.  Defendant was entitled to a commission pursuant to the contract signed between Ling's Properties and G7 and there is no evidence from the record that Defendant fraudulently misled Plaintiff with respect to his role in the transaction, or the fees he would be seeking from Plaintiff.  Plaintiff also alleges that Defendant failed to use his best efforts in order to procure a satisfactory purchase and sale agreement for the Bank of America Mortgage as stated in the Contract. The Court believes that Defendant did use his "best efforts" to procure a satisfactory purchase and sale agreement as evidenced by the fact that Plaintiff proceeded with the purchase and did not attempt to back out of the transaction. At no point in

time did Plaintiff express dissatisfaction with the purchase price, nor did the Plaintiff discuss the possibility of canceling the transaction before the closing took place.

Ms. Su and Mr. Su testified that Defendant misrepresented the speed and efficiency at which the transaction would be completed. Tr. Tran. P. 143. However, Mr. Su also testified that he believed this was a very complicated transaction. Tr. Tran. P. 141. These two statements seem to contradict each other. Plaintiff was expecting the profit from this transaction to be high, the speed at which the transaction would close to be short, and that the risk of the transaction would be low. Based on the Contract between Plaintiff and Defendant, Defendant was entitled to payment of $24,000 once Plaintiff acquired the mortgage from Bank of America. These actions were completed, and the record does not reflect that Debtor obtained this payment by fraudulent means. To the extent that Justice Murphy concluded that Ms. Su believed Defendant was acting as counsel to the Plaintiff, this finding is not sufficient to establish as a matter of law that Defendant acted with fraudulent intent. Whatever Ms. Sue believed, while relevant, is not dispositive of whether Defendant intended to commit fraud. Based on the Contract, G7 provided a service and was paid pursuant to the terms of the Contract. Plaintiff has failed to introduce sufficient evidence to support a finding that the judgment debt is non-dischargeable pursuant to Section 523(a)(2)(A), and this cause of action shall be dismissed.

## Section 523(a)(4)

Section 523(a)(4) of the Code provides an exception to discharge for any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). In Plaintiff's second cause of action of the complaint, Plaintiff alleges that Defendant acted as Plaintiff's attorney and absent such a relationship, the alleged frauds committed by Defendant could not have been achieved.

When seeking to have a debt non-dischargeable under Section 523(a)(4), three elements must be satisfied. The three elements are: "first, that the debt was incurred in connection with an express or technical trust, second, that the debtor acted in a fiduciary capacity with respect to that trust, and third, that the debtor engaged in fraud or defalcation within the meaning of bankruptcy law." *In re Salim*, 2015 WL 124000 (Bankr. E.D.N.Y. 2015).

It is a predicate to finding fraud or defalcation under Section 523(a)(4), that a fiduciary relationship existed between the parties. Whether a debtor is acting in a fiduciary capacity, initially, is a matter to be established under federal law. *Zohlman v. Zohldan,* 226 B.R. 767, 772 (Bankr. S.D.N.Y. 1998). Under federal law, a fiduciary is to be defined narrowly and generally exists as a result of a "technical" or "express" trust, and not an equitable trust. *In re Hayes*, 183 F.3d 162 (2d Cir. 1999); *Zohlman v. Zohldan*, 226 B.R. at 773. To determine when a 'technical' or 'express' trust exists, we look to New York law. *Zohlman v. Zohldan*, 226 B.R. at 773; *In re Yerushalmi*, 393 B.R. 288, 295 (Bankr. E.D.N.Y. 2008). A mere allegation of a fiduciary relationship is "insufficient as a matter of law for purposes of asserting a nondischargeability claim under [Section] 523(a)(4)." *In re Kaufman*, 85 B.R. 706, 710 (Bankr. S.D.N.Y. 1988).

Based on the testimony and documentary evidence, the Court finds that Plaintiff failed to prove by a preponderance of the evidence that a fiduciary relationship existed between Plaintiff and Defendant. Ms. Su testified at trial that she was under the impression that Defendant was acting as her attorney based on representations made by her previous broker, Mr. Koukou, and by Defendant. Plaintiff provided the first payment to Defendant in check form and wrote in the subject line that it was payment for "legal fees." Additionally, Defendant attended the closing with the Plaintiff and pushed documents towards Plaintiff and explained them to her. However,

Defendant testified that he was not acting as her attorney in the transaction, and the only agreement between the parties was memorialized in the Contract between Plaintiff and G7.

These facts are not sufficient to establish a fiduciary relationship between Plaintiff and Defendant. Moreover, the Appellate Division deemed these payments to be commissions made to an unlicensed broker, not legal fees. If anything, this Court is bound by this determination, which was essential in finding liability against G7. Therefore, the Court dismisses this cause of action.

## Section 523(a)(6)

Section 523(a)(6) of the Code provides an exception to discharge for any debt arising from "willful and malicious injury by the debtor to another entity or the property of another debtor." In Plaintiff's third cause of action, Plaintiff alleges that Defendant was aware of his limitations as an attorney with regards to permissible fees and his obligations to enter into a retainer agreement. As a result of his failure to adhere to these limitations, Defendant willfully and maliciously caused injury to Plaintiff by convincing her to sign the contract with G7 so G7 could collect the brokerage fee. Based on the testimony of Defendant and the documentary evidence, the Court does not find that Defendant acted willfully and maliciously to injure Plaintiff.

In order to satisfy the requirements of Section 523(a)(6), Plaintiff must prove three elements: "first, that the debtor acted willfully, second, that the debtor acted maliciously, and third, that the debtor's willful and malicious actions caused injury to the creditor or its property." *In re Salim*, 2015 WL 124000, *22 (Bankr. E.D.N.Y. 2015).

"The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied" by a preponderance of the evidence. *Rupert v. Krautheimer* (*In re Krautheimer*), 241

B.R. 330, 340 (Bankr. S.D.N.Y. 1999). In 1998, the Supreme Court in *Kawaauhau v. Geiger*, concluded that "willful" within the meaning of Section 523(a)(6) requires a "deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. . . ." *Kawaauhau v. Geiger*, 523 U.S. 57, 62-63 (1998); *see also Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006). Actions which are negligent or reckless do not satisfy the Section 523(a)(6) "willful" standard.

In the Second Circuit, the term "malicious" can be actual or constructive and is defined as "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Navistar Financial Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 88 (2d Cir. 1996). A case where a debtor knowingly breaches a contractual obligation "does not satisfy the malicious element of § 523(a)(6) absent 'some aggravating circumstance evidencing conduct so reprehensible as to warrant denial of the [discharge] to which the honest but unfortunate debtor would normally be entitled under the Bankruptcy Code.'" *Rescuecom Corp. v. Mohamed E. Khafaga* (*In re Khafaga*), 419 B.R. 539, 550 (Bankr. E.D.N.Y. 2009) (citing *Novartis Corp. v. Luppino* (*In re Luppino*), 221 B.R. 693, 700 (Bankr. S.D.N.Y. 1998)).

The court finds that the Plaintiff did not satisfy the elements of Section 523(a)(6) by a preponderance of the evidence. First, the Defendant's acts were not wrongful, or without just cause or excuse. Plaintiff did not show that Defendant acted intentionally to cause injury. Defendant was found liable for violating RPL Section 442-d, which is a strict liability statute and does not require a finding of intent. Second, this Court does not believe there was any injury caused to Plaintiff. Plaintiff claims that Defendant caused injury through the exorbitant fee obtained for the work he performed.  However, there is no cognizable injury flowing from this fee.  Plaintiff was aware of the amount that would be owed to Defendant when the necessary

work was completed. According to the Contract, Defendant was entitled to payment as soon as Plaintiff obtained the mortgage from Bank of America. Additionally, Plaintiff purchased the Property for $800,000 and later sold the Property for $1,535,000. Although there were expenses involved with the purchase of the Property, Plaintiff failed to demonstrate that any damages were incurred in connection with the purchase of the mortgage and the sale of the Property. Therefore, the third cause of action shall be dismissed.

## CONCLUSION

Based upon the evidence before it, the Court finds that Plaintiff has not shown by a preponderance of the evidence that Defendant's debt is non-dischargeable pursuant to Section 523(a)(2)(A), 523(a)(4) or 523(a)(6) of the Bankruptcy Code. Therefore, judgment shall be entered in favor of Defendant dismissing the complaint in its entirety.

Dated: Central Islip, New York  
July 30, 2015

By: **/s/ Robert E. Grossman**  
Robert E. Grossman,  
United States Bankruptcy Judge